UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST PENSION FUND, and TRUSTEES RONALD E. POWELL, ROBERT O'TOOLE, ROBERT WILSON, BRIAN JORDAN, DONALD G. SCHAPER, WILLIAM R. SEEHAFER,<br><br>          Plaintiffs,<br><br>    v.<br><br>SFH WEST FRANKFORT LLC, d/b/a TOM'S MAD PRICER,<br><br>          Defendant. | Case No. |

## COMPLAINT

Now Come Plaintiffs, United Food and Commercial Workers Unions and Employers Midwest Pension Fund ("Pension Fund"), and Trustees, Ronald E. Powell, Robert O'Toole, Robert Wilson, Brian Jordan, Donald G. Schaper, William R. Seehafer ("Trustees") (collectively, "Plaintiffs"), and for a cause of action against SFH West Frankfort LLC, d/b/a Tom's MAD Pricer ("SFH" or "Defendant") allege as follows:

## INTRODUCTION

1. This action is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1001 *et seq.*, and the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. § 185. The Pension Fund seeks a money judgment awarding delinquent contributions, interest, liquidated damages, and attorney's fees and costs as a result of Defendant's failure to pay contributions required by a collective bargaining agreement.

2. The Pension Fund further seeks injunctive relief pursuant to ERISA, to enjoin the prospective failure of Defendant to allow the Pension Fund to conduct an audit of Defendant's payroll books and records in violation of Section 209 of ERISA, 29 U.S.C. § 1059, Section 302 of the LMRA, 29 U.S.C. § 185, and the Trust Agreement.

3. Finally, The Pension Fund seeks a money judgment to collect withdrawal liability in the amount assessed against Defendant pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381, and other monetary relief pursuant to Sections 502(g)(2) and 4301(e) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(e).

## JURISDITION AND VENUE

4. Jurisdiction is conferred on this court by ERISA Sections 502(a)(3), (e)(1) and (f), and 4301(c), 29 U.S.C. §§ 1132(a)(3), (e)(1) and (f), and 1451(c), and by the provisions of 28 U.S.C. § 1331, relating to any civil action or proceeding arising under the laws of the United States

5. Venue is proper in this court pursuant to Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Pension Fund is administered in this judicial district at 9801 W. Higgins Road, Rosemont, Illinois.

## PARTIES

6. The Pension Fund is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), and an "employee pension benefit plan" within the meaning of Sections 3(2)(A) and (3) of ERISA, 29 U.S.C. §§ 1002(2)(A) and (3), established and maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries, and subject to the withdrawal liability provisions of ERISA.

7. The Trustees of the Pension Fund are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are also the plan sponsor within the meaning of ERISA § 3(16), and have authorized this lawsuit.

8. Pursuant to Sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. § 1132(a)(3), and 29 U.S.C. § 1451, the Plaintiffs are authorized to bring this action on behalf of the Plan, its participants and its beneficiaries.

9. SFH is an Illinois corporation that does business at 22310 E. Webb Road, Bluford, Illinois 62814.

10. SFH, at all times material, has been an employer within the meaning of Sections 3(5) of ERISA, 29 U.S.C. § 1002(5), and is engaged in an industry affecting commerce within the meanings of Section 3(11) and (12) of ERISA, 29 U.S.C. § 1002(11) and (12).

## FACTUAL ALLEGATIONS

**A. SFH's Delinquent Pension Contributions.**

11. SFH, at all times material, participated in and contributed to, the Plan pursuant to the terms of a Collective Bargaining Agreement ("CBA") between itself and United Food and Commercial Workers Union Local 881 ("Union"). (A true and correct copy of the most recent Collective Bargaining Agreement is attached hereto as Exhibit A).

12. SFH, at all times material, was a party to the Agreement and Declaration of Trust ("Trust Agreement"). (A true and correct copy of the Trust Agreement is attached hereto as Exhibit B).

13. In addition to the CBA, the Participation Agreement and Trust Agreement require SFH to submit monthly pension contributions to the Fund.

14. The Trust Agreement binds SFH to the Pension Fund's Delinquency Collection Procedure adopted by the Trustees ("Delinquency Policy"). (A true and correct copy of the Delinquency Policy is attached hereto as Exhibit C).

15. The Delinquency Policy requires SFH to submit monthly remittance reports and pension contributions to the Fund, establishes the Fund's interest rate on delinquent contributions, provides for the Pension Fund to charge interest on contributions, and provides for the Pension Fund to charge interest on contributions paid late.

16. For the months of June 2017 and July 2017, SFH failed or refused to pay its delinquent pension contributions.

17. By letter dated September 19, 2017, the Pension Fund notified SFH that it failed to pay its contribution payments, and owed the Pension Fund $225.52 for its delinquent Plan contributions, liquidated damages and attorney's fees. (A true and correct copy of the September 19, 2017 letter is attached hereto as Exhibit D).

18. To date, SFH has not paid its Plan contributions for the months of June 2017 and July 2017.

19. As of February 2018, the estimated Plan contribution delinquency owed by SFH is $242.80.

**C.    SFH's Refusal to Allow the Pension Fund to Conduct a Payroll Audit.**

20. Article V, Section 3, of the Trust Agreement authorizes the Pension Fund to conduct payroll audits of participating employers.

21. On information and belief, SFH did not provide payroll records for two bargaining unit employees that SFH was obligated to pay pension contributions on their behalf. Based on this

4

information, the Pension Fund requested a payroll audit for the period of April 2013 through March 2017.

22. Thereafter, SFH failed or refused to allow the Pension Fund's auditors to conduct the payroll audit.

23. By letter dated September 19, 2017, the Pension Fund requested that SFH cooperate with the Pension Fund and allow its auditors to conduct a payroll audit. (Exhibit D).

24. As of February 2018, SFH has failed or refused to allow the Pension Fund to conduct a payroll audit of SFH's payroll books and records as required by the Trust Agreement, Participation Agreement, and Delinquency Policy.

**D. SFH's Delinquent Withdrawal Liability Payments.**

25. On November 30 2017, SFH completely withdrew from the Pension Fund triggering an assessment of withdrawal liability pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

26. By letter dated July 17, 2017, the Pension Fund assessed SFH withdrawal liability for the 2017 plan year. (A true and correct copy of the July 17, 2017 Assessment Letter is attached hereto as Exhibit E).

27. The Assessment Letter demanded payment of SFH's withdrawal liability, which was calculated as $304,644, payable in 240 monthly installments of $951.35, commencing on October 1, 2017, which is subject the statutory 20-year cap on payments and reduces the liability to $228,324.

28. Pursuant to 29 U.S.C. § 1399, SFH did not exercise its right of review and has therefore waived its right to challenge the assessed withdrawal liability.

29. The Assessment Letter also provided SFH notice that, pursuant to ERISA Section 4219(C)(5), the Pension Fund reserved the right to declare SFH in default and demand immediate payment of the entire assessed withdrawal liability, including interest, if the Pension Fund determined there was a substantial likelihood that SFH would not pay the assessed withdrawal liability.

30. Under Article XVI of the Plan, "Default" occurs when:

> "Where after request by the Trustees the Employer is unable to provide adequate assurance, under all the facts and circumstances, that it is likely to pay its Withdrawal Liability."

31. On information and belief, there is a substantial likelihood SFH will soon declare bankruptcy and will not be capable of paying the Pension Fund the balance for the assessed withdrawal liability. Moreover, SFH has also failed or refused to pay the Union its delinquent pension contributions, attorney's fees associated with its previous contribution delinquency, and has prohibited the Pension Fund from conducting its payroll records.

32. As of February 2018, neither SFH nor any affiliated person or entity has made any payments toward the assessed withdrawal liability.

33. Base on the above, SFH is in default for its withdrawal liability and the Pension Fund is entitled to accelerate its demand for withdrawal liability payment.

34. SFH is in default to the Pension Fund and withdrawal liability is due and owing to the Pension Fund in the amount of $228,324, plus interest.

## Count I
### (Delinquent Contributions in Violation of ERISA and the Trust Agreement)

35. The Pension Fund realleges and incorporates the above paragraphs as if fully set forth herein.

36. The CBA and the Participation Agreement obligate Defendant to pay monthly pension contributions to the Pension Fund. The Delinquency Policy requires Defendant to submit monthly remittance reports with the contributions.

37. Defendant has failed to pay an estimated total of $242.80 in contributions owed to the Fund for the months of June and July 2017.

38. By failing to pay the required monthly contributions, Defendant has violated Section 515 of ERISA, 29 U.S.C. § 1145, Section 302 of the LMRA, 29 U.S.C. § 185, and the Trust Agreement.

39. Defendant has failed to provide the required remittance reports for the months of June and July 2017.

40. By failing to provide monthly remittance reports, Defendant has violated the Delinquency Policy.

41. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the LMRA, the Trust Agreement, and the Participation Agreement, Defendant is liable to the Pension Fund for $242.80 in estimated delinquent contributions, liquidated damages, attorney's fees and remittance reports for the months of June and July 2017, and any contributions that become delinquent or are discovered while this action is pending, plus interest on the delinquent contributions and contributions paid late, liquidated damages, and reasonable attorney's fees and costs incurred by the Fund in pursuing the delinquent amounts.

## Count II
### (Injunction to Allow Payroll Audit)

42. The Pension Fund realleges and incorporates the above paragraphs as if fully set forth herein.

43. Defendant has continuously refused or failed to allow the Pension Fund to conduct a payroll audit.

44. Section 209 of ERISA, 29 U.S.C. § 1059 and the Trust Agreement authorizes the Pension Fund to conduct payroll audits of participating employers.

45. Pursuant to ERISA, 29 U.S.C. § 1132, the LMRA, and the Trust Agreement, the Pension Fund seeks an order that Defendant allow the Pension Fund to conduct an audit of Defendant's payroll books and records.

## Count III
### (SFH's Withdrawal Liability)

46. The Pension Fund realleges and incorporates the above paragraphs as if fully set forth herein.

47. Under Article XVI of the Plan, "under all the facts and circumstances" a participating employer can default on its assessed withdrawal liability if the Pension Fund determines there is a substantial likelihood that the payments will not be made as result of an employer's involvement in bankruptcy or other debtor proceedings adversely affecting the employer's credit.

48. Based on the facts and circumstances described herein, there is a substantial likelihood Defendant will not be able to pay its assessed withdrawal liability. Accordingly, Defendant has defaulted under the terms of the Plan.

49. Pursuant to 29 U.S.C. § 1399(c)(5)(B), because Defendant fell into default under the terms of the Plan, the Pension Fund is entitled to accelerate payment of Defendant's withdrawal liability.

50. Accordingly, Defendant is liable to Plaintiffs for the assessed withdrawal liability in the amount of $228,324 together with associated interest, liquidated damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

A. Order Defendant to pay the Pension Fund:

   (1) $242.80 in estimated delinquent contributions, interest and liquidated damages;

   (2) additional amounts that may become delinquent during the pendency of this action or which become ascertainable based on the Pension Fund's review of Defendant's employment records.

B. Restrain and enjoin Defendant, its officers, agents, servants, attorneys, successor, assigns, and all persons acting on its behalf or in conjunction with it from:

   (1) refusing to timely file remittance reports due to the Pension Fund for all periods for which Defendant is obligated to file such reports under the terms of the collective bargaining agreement;

   (2) failing or refusing to pay to Plaintiffs all amounts, including contributions, interest, liquidated damages, and costs due to the Pension Fund for which Defendant is obligated to make payments under the terms of the Agreement; or

    (3)  refusing to timely allow an audit of Defendant's payroll books and records.

C.  Enter an order declaring Defendant liable for the assessed withdrawal liability;

D.  Order Defendant to pay the Pension Fund $228,324 for the outstanding assessed withdrawal liability, plus interest and liquidated damages;

E.  Order Defendant to pay the Pension Fund's reasonable attorney's fees and cost incurred in the prosecution of this action; and

H.  Award Plaintiffs such other and further relief as this Court may deem just and proper.

                Respectfully submitted,

                /s/ Joseph C. Torres
                Joseph C. Torres
                Attorney for Plaintiffs

THE KARMEL LAW FIRM
221 North LaSalle Street
Suite 1550
Chicago, IL 60601
(312) 641-2910
joe@karmellawfirm.com